**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANN FORD** ) | |
| ) | Case No. 19-cv-5967 |
| Plaintiff, ) | |
| ) | |
| *Individually and on Behalf of All* ) | |
| *Similarly Situated Employees* ) | |
| ) | |
| v. ) | |
| ) | |
| **U.S. FOODS, INC.** ) | |
| 9399 W Higgins Rd #100 ) | Jury Demanded |
| Rosemont, Illinois 60018 ) | |
| ) | |
| Defendant. ) | |

**COLLECTIVE ACTION COMPLAINT FOR WAGES OWED**

ANN FORD, Plaintiff, by and through her undersigned counsel and Lopez & Sanchez, LLP and The Law Offices of Peter T. Nicholl, hereby submits her Complaint against U.S. FOODS, INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, interest, reasonable attorneys' fees and costs under the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/1, *et seq.* (hereinafter, "IMWL") and in support thereof, states as follows:

**INTRODUCTION AND BACKGROUND**

U.S. Foods, Inc. ("Defendant") is a national food distribution company with more than sixty (60) locations across the country. Defendant provides bulk food products to various customers, including hotels, restaurants and various retail establishments.

Defendant employs "Buyers" to facilitate the transfer of products between its customers and third-party vendors. Because the supply of Defendant's customers' products constantly fluctuates throughout the day, Buyers have to continuously respond to Defendant's latest inventory reports to see which of their assigned customers' products were close to being out of stock. These reports are formulated to display the exact product needs for all customers within the particular region to which a Buyer is assigned. Defendant utilizes software that is programmed to automatically inform Buyers of the exact products they need to purchase.

Plaintiff was employed as a Buyer for Defendant. Her work was highly regimented. All of her purchasing activities were electronically monitored; Defendant's software was capable of indicating the precise percentage of a Buyer's inventory that he or she was able to successfully purchase each day.

Plaintiff's and other Buyers' purchasing tasks were mundane and repetitive. However, they still took a long time to complete. Buyers had to work overtime in order to complete their assignments.

Prior to October, 2016, Plaintiff and other Buyers were classified as non-exempt hourly employees; they were all paid an hourly rate and appropriately received overtime wages. Defendant subsequently reclassified Plaintiff and other Buyers as salaried employees. However, the duties performed by Defendant's Buyers remained the same. The only difference was that their workload increased and they were forced to work even more overtime in order to complete their assignments.

Because Plaintiff and other Buyers were reclassified as salaried employees, they were not paid overtime wages. Defendant willfully misclassified its Buyers as salaried employees to avoid paying them overtime wages. Hundreds of Buyers have been harmed by Defendant's unlawful

conduct.

## THE PARTIES

1. U.S. Foods, Inc. (hereinafter, "Defendant") is an incorporated for-profit business engaged in the food distribution industry.

2. Defendant's principal corporate office is located in Rosemont, Illinois.

3. Defendant operates more than sixty (60) offices and distribution centers across the United States.

4. Defendant is subject to the FLSA and the IMWL by the nature of its business and the amount in revenues generated.

5. Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

6. Plaintiff Ann Ford (hereinafter, "Ford") is an adult resident of Cook County, Illinois.

7. Plaintiff worked for Defendant, who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d) and the IMWL 820 Ill. Comp. Stat. Ann. 105/1.

8. At all times relevant to this Complaint, Plaintiff engaged in interstate commerce by the nature of her duties performed as part of her employment with Defendant.

9. For the duration of the relevant period, Plaintiff worked as a salaried non-exempt employee for Defendant.

10. From approximately January 2014 until April 2019, Plaintiff Ford was employed as a Buyer for Defendant. She worked out of Defendant's headquarters in Rosemont, Illinois.

11. At all times relevant to this Complaint, Defendant supervised the duties performed by Plaintiff and its other Buyers.

12. Defendant controlled Plaintiff's tasks and the tasks performed by other similarly situated employees.

13. Defendant was actively engaged in the management and direction of Plaintiff and other Buyers.

14. Defendant set Plaintiff's schedule and the schedules for others similarly situated.

15. Defendant had the power and authority to change the course of Plaintiff's and other Buyers' duties.

16. Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and other similarly situated employees.

17. Defendant made all decisions relating to Plaintiff's and other similarly situated employees' rates and method of pay.

18. Plaintiff and others similarly situated recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

19. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's IMWL claims.

20. Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Illinois. Defendant employs numerous residents of the state of Illinois, who would be members of the proposed class. A substantial part of the events or omissions giving rise to the instant claims also occurred in Illinois.

**FACTUAL ALLEGATIONS FOR ALL CLAIMS**

21. Defendant distributes bulk food products to a variety of customers across the country. Defendant's customers include hotels, restaurants and retail establishments, as well as senior living facilities and hospitals.

22. To assist its customers, Defendant hired Plaintiff and other similarly situated employees to work as Buyers. Their work centered on purchasing food products from third-party vendors on behalf of Defendant's customers.

23. Plaintiff and other Buyers would start their day by reviewing their assigned inventory reports. Each report would specify the exact quantity of a product they had to purchase. Buyers were typically assigned anywhere from five thousand (5,000) to seven thousand (7,000) product lines.

24. Defendant utilized the software PRISM, which had the information for approximately one hundred (100) to two hundred (200) vendors that Buyers could use to purchase the products their customers needed. The exact quantity of a product they had to purchase and the particular vendor to be used to make their purchase were all easily identifiable in the PRISM software.

25. Plaintiff and other Buyers were required to use the software SAP to complete their purchases. Basic "point-and-click" activity was all that was needed to use the software. To finalize an individual purchase, Plaintiff and other Buyers would utilize a dropdown menu to simply select the products they had to buy and click submit.

26. Once this process was complete, the new data would automatically populate an updated inventory report. This document replaced prior inventory reports with the new product supply numbers that Plaintiff and other Buyers had to use.


27. Plaintiff's and other Buyers' inventories were constantly monitored. They were required to keep their assigned inventory at a rate of ninety-nine-point-five (99.5) percent. Where they stood with their exact percentages was easily visible to all staff and supervisors on the floor.

28. Defendant implemented an electronic system to ensure that its Buyers' inventory percentages were satisfactory. Each Buyer's product inventories were given a green, yellow or red label for purposes of indicating how close they were to fulfilling their product list. A green label indicated that they were close to completion, a yellow label indicated they were more than half way finished and a red label signified they were far off.

29. If Plaintiff's or other Buyers' inventories were given a red label for an extended period, they would receive constant reprimands from their supervisors to fulfill their missing orders. They would also be reprimanded if the software indicated their orders were not complaint with Defendant's requirements. There was constant pressure to ensure that their orders conformed with Defendant's exact requirements.

30. Plaintiff and other Buyers were also required to constantly monitor Defendant's unsold inventory for purposes of possibly returning unsold items to the original third-party vendors. If a vendor requested to repurchase the product for less than the original purchase price, Plaintiff and other Buyers were required to relay this request to their supervisors.

31. Defendant's vendors would also regularly call and email Buyers with requests for basic information regarding their products. Buyers received similar inquiries from Defendant's customers. Plaintiff and other Buyers were required to promptly respond to these inquiries.

32. Plaintiff and other Buyers were also required to attend regular meetings. These meetings were primarily for the purpose of reporting to their supervisors where they stood with their assignments.

33. All of Plaintiff's and other Buyers' assignments were basic in nature. To perform their duties, they did not need specialized degrees, certifications or experience.

34. Plaintiff's and other Buyers' duties did not require the use of analysis. They simply had to follow Defendant's strict guidelines.

35. Defendant's guidelines did not require Plaintiff and other Buyers to identify the needs of Defendant's business, which includes the products that Defendant offered and at what price. It was only required that they purchase the exact quantity of a product that a customer needed through use of Defendant's software.

36. Plaintiff and other Buyers were required to follow the formulas in the software to make their purchases. Any deviation from a product or price not clearly indicated by the software would require Buyers to obtain authority from their supervisors. They lacked the authority to alter the quantity or negotiate the price of any products on their own.

37. Plaintiff and other Buyers did not have decision-making authority. Their work did not include making recommendations. They did not have discretion in regard to any of their tasks.

38. Plaintiff's and other Buyers' tasks did not require them to interpret information, nor write substantive reports. Their tasks also did not necessitate the use of independent judgment.

39. All of Plaintiff's and other Buyers' tasks were supervised by Defendant's supervisors, managers or another higher-ranking employee. They were always required to follow Defendant's policies when performing their duties.

40. Plaintiff and other Buyers adequately performed their duties and satisfied the requirements of their positions to benefit Defendant.

41. For her work as a Buyer, from approximately January 2014 until October 2016, Plaintiff Ford was paid an hourly rate of approximately thirty dollars ($30.00). Plaintiff Ford's position was subsequently reclassified and from approximately October 2016 until April 2019, Plaintiff Ford was paid an annual salary of approximately sixty-three thousand dollars ($63,000).

42. Upon the commencement of her employment, Defendant advised Plaintiff and other Buyers that their schedule would be from 7:00 a.m. to 4:00 p.m., or 8:00 a.m. to 5:00 p.m., Mondays through Fridays. This was to include an hour break for lunch. However, the hours they actually worked far exceeded this schedule.

43. Due to the demands of their employment, it was routine for Plaintiff and other Buyers to begin working as early as 6:30 a.m. and continue to work until 7:00 p.m. or later. Their workload also frequently required them to work weekends.

44. Plaintiff's and other Buyers' workload was extreme. Purchasing for as many as seven thousand (7,000) product lines and the pressure to maintain a nearly perfect inventory required Plaintiff and other Buyers to work beyond their scheduled hours.

45. There were always hundreds of products on Plaintiff's daily inventory reports that she was responsible for purchasing. The status of Plaintiff's and other Buyers' inventory reports would also constantly change throughout their day. Plaintiff and other Buyers were required to rapidly respond to these changes.

46. Failing to rapidly respond would result in their product inventory ratio falling below satisfactory levels, which would in turn elicit disciplinary measures from their supervisors. Plaintiff and other Buyers consistently worked overtime in an attempt to avoid these measures.

47. The constant communications they received from Defendant's customers and third-party vendors also caused Plaintiff and other Buyers to work overtime. Customers and

vendors always had questions regarding their products that Buyers were required to answer. Answering all of these questions often forced Plaintiff and other Buyers to work additional hours before and after their regular shifts.

48. To answer these questions, Plaintiff and other Buyers had to search Defendant's databases, where most of the product information was stored. Having to constantly search for this information often prevented Plaintiff and other Buyers from completing their other assignments during their scheduled shifts, leading them to consistently work overtime as a result.

49. The time associated with having to keep track of unsold inventory added additional time to a Buyer's workweek. It was routine for vendors to request a repurchase price for a product that was higher than its original sale price. When this occurred, Plaintiff and other Buyers had to relay this information to Defendant's supervisors and obtain permission to resell the inventory at the higher price. Relaying this information resulted in Plaintiff and other Buyers having to prepare correspondence and make telephone calls continuously throughout their day. The volume of these communications forced them to work outside of their regularly scheduled hours.

50. Understaffing also contributed to the excessive hours that Plaintiff and other Buyers worked. Over the course of Plaintiff's employment, there was a continual reduction in the number of Buyers that Defendant staffed. This caused Plaintiff's and other Buyers' already excessive workload to increase.

51. Because Defendant failed to maintain a sufficient number of Buyers, whenever a Buyer called in sick or went on vacation, Plaintiff and other Buyers were forced to add the absent Buyers' duties to their already heavy workload. These conditions also resulted in Buyers having to work overtime. This was the only way they could finish their assignments.

52. The combination of their assignments resulted in overtime being a regular part of Plaintiff's and other Buyers' employment. They consistently worked as many as fifty (50) to sixty (60) hours each week. There were times when they worked even more.

53. Defendant knew that Plaintiff and other Buyers consistently worked overtime.

54. Defendant required, suffered and/or permitted Plaintiff and other Buyers to work these overtime hours.

55. Because they were all paid a salary, Plaintiff and other Buyers received the same regular biweekly payments, regardless of the number of hours they worked each week.

56. Defendant refused to pay its Buyers overtime wages; Plaintiff and other Buyers were not compensated at a rate of "time and a half" their regular rate of pay for all hours worked over forty (40) each week.

57. There is no bona fide dispute that Plaintiff and other Buyers are owed overtime wages.

58. The duties performed by Plaintiff and other Buyers did not meet the criteria for any exemptions contained within the FLSA, or applicable stage wage laws.

59. Plaintiff's and other Buyers' duties remained exactly the same as when they were classified as hourly non-exempt employees who were eligible to receive overtime wages.

60. In bad faith, Defendant willfully withheld the overtime wages owed to Plaintiff and its other Buyers by misclassifying them as salaried employees.

61. Consequently, on behalf of themselves and all similarly situated employees, Plaintiff seeks the wages to which she is entitled and other available relief through this Complaint.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

62. Plaintiff and other similarly situated employees worked as Buyers for Defendant.

63. The FLSA requires employers to compensate non-exempt employees such as Plaintiff and others similarly situated with overtime wages for all hours worked over forty (40) within a single workweek.

64. Defendant knew that Plaintiff and similarly situated employees customarily worked over forty (40) hours per week.

65. Defendant suffered or permitted Plaintiff and other Buyers to work more than forty (40) hours per week.

66. Defendant knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

67. Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of herself and those similarly situated.

68. Plaintiff demands damages reflecting an overtime rate of not less than one and a half (1.5) times her regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations. Plaintiff makes these same demands on behalf of all members of the putative collective class.

69. Plaintiff consents to be party plaintiff in this matter. Plaintiff's consent form is attached to this Complaint as Exhibit 1.

70. It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

71. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

72. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

73. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

74. Upon information and belief, others will choose to join Plaintiff in this action by opting-in to this lawsuit in order to recover unpaid wages and other available relief.

## **CLASS ACTION ALLEGATIONS UNDER ILLINOIS MINIMUM WAGE LAW**

75. Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and other current and former employees who worked for Defendant as Buyers in Illinois.

76. The class Plaintiff seeks to represent is defined as:

> All individuals who are or were employed by Defendant as salaried Buyers and/or in similar positions in the state of Illinois, and who have been denied overtime compensation as required by the respective state labor laws and implementing regulations at any time within three (3) years prior to the filing date of this action through the date of final disposition (the "proposed class").

77. The proposed class is so numerous that joinder of all members is impracticable. During the relevant period, Defendant employed dozens of Buyers in the state of Illinois.

78. The claims of the named Plaintiff are typical to the members of the proposed class. The named Plaintiff and those similarly situated regularly worked more than forty (40) hours per week and were denied overtime compensation. Each member of the class was paid a

salary that remained unchanged, regardless of the number of hours they worked each week. As a result, each and every class member suffered the same harm.

79. Each class member's claim is controlled by Illinois's wage and hour statutory scheme and one set of facts. Pursuant Fed. R. Civ. P. 23(b)(3), questions of law and fact are common to the class and predominate over any individual questions. Such common questions of law and fact include, but are not limited to, whether the Rule 23 Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime; and whether Defendant violated IMWL by failing to pay Plaintiff and the class overtime compensation for hours worked in excess of forty (40) hours per workweek.

80. Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not promote judicial efficiency or equity, nor result in consistent results. Class certification will eliminate the need for duplicate litigation.

81. Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted, or has refused to act, on grounds generally applicable to the Rule 23 class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

82. Plaintiff will fully and adequately protect the interests of the class. Plaintiff seeks the same recovery as the class, predicated upon the same violations of law and the same damage

theory. Plaintiff has retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the class.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Count I.  Violation of the FLSA: Failure to Pay Overtime Wages*

83. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

84. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

85. As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiff for these additional hours.

86. Defendant willfully and intentionally failed to compensate Plaintiff for the overtime hours she worked by unjustifiably paying Plaintiff under the guise of a salary.

87. There is no bona fide dispute that Plaintiff is owed overtime wages for the work she performed for Defendant.

88. Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate her for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times her regular hourly wage rate.

### *Count II. Violation of the Illinois Minimum Wage Law: Failure to Pay Wages Owed*

89.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

90.     Pursuant to the Illinois Minimum Wage Law, each employer shall pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

91.     Plaintiff and the Rule 23 class are non-exempt employees entitled to overtime compensation for all hours worked in excess of forty (40).

92.     Plaintiff and the proposed Rule 23 class work(ed) in excess of forty (40) hours per week, but did not receive the appropriate overtime compensation from Defendant.

93.     Defendant unlawfully compensated Plaintiff and the class by paying them a salary.

94.     Defendant willfully and intentionally failed to compensate Plaintiff and the rule 23 class for the overtime hours they worked.

95.     There is no bona fide dispute that Plaintiff is owed overtime wages for the work she performed for Defendant.

96.     Defendant acted willfully and with reckless disregard of clearly applicable provisions of the IMWL.

97.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the class have suffered and will continue to suffer a loss of income and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and others similarly situated, prays for the following relief:

a)     Designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) Designation of this action as a class action on behalf of Plaintiff and all members of the proposed class;

c) A finding that Defendant's classification of Plaintiff and similarly situated employees as exempt was done in error;

d) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA;

e) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by IMWL;

f) An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiff's regular hourly rate for all overtime hours worked, to Plaintiff and those similarly situated;

g) An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiff and those similarly situated;

h) An award of treble damages equal to the total amounts of unpaid wages owed to Plaintiff and those similarly situated;

i) An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant;

j) Leave to add additional plaintiffs, opt-in or party, through the filing of consent forms; and

k) All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of her peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
36 South Charles Street, Suite 1700
Baltimore, MD 21201

16

Telephone: (443) 320-7417

*/s/ George E. Swegman*
George E. Swegman, Esq. (19444)
gswegman@nicholllaw.com
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (410) 320-7268

*/s/ Mike A. Brown*
Mike A. Brown, Esq. (20814)
mbrown@nicholllaw.com
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (443) 320-7254

*/s/ Jorge Sanchez*
Jorge Sanchez
jsanchez@lopezsanchezlaw.com
77 W. Washington, Suite 1313
Chicago, IL 60602
Telephone: (312) 420-6784